WILLIAM McALLISTER *vs.* TERRITORY OF WASHINTGON.

Under the practice act of 1869, a change of venue from one district to another cannot be demanded as a right, but as a matter to be granted, or refused, in the exercise of sound judicial discretion.

In case a sub-district is composed of more than one county, the court are of opinion, that the better construction of section 231, page 250, laws 1869, would require, upon proper motion and affidavit, the exclusion of jurors from the designated county. Such showing is not made in this case.

The court was asked to instruct the jury to the effect, that where one of two combatants kills a third person, who interferes, without reasonable notice, to prevent one of the contestants from killing the other, such killing cannot be murder in first degree.

*Held*, The refusal, so to instruct, was not error.

The court properly refused to instruct the jury, that if, while two persons are engaged in fighting, a third person assaults one of the combatants, and is killed by him, such killing is no more than manslaughter.

Insanity is a matter of independent defense and, as such, must be proven to the satisfaction of the jury, unless the facts upon which it is based are part of the *res gestæ.*

A mere blow inflicted upon defendant, nothing appearing to show its severity, or other physical consequence resulting from it, is not evidence from which insanity may be inferred.

Error to First Judicial District.

*Wyche & Allen Bros.* for plaintiff in error.

*N. T. Caton* for defendant in error.

Opinion by Jacobs, Chief Justice.

Indictment for murder in the first degree. From the first Judicial District, Walla Walla county.

Wm. McAllister, plaintiff in error, was indicted at the May term, A. D., 1872, of the district court of the first Judicial District, holding terms at the city of Walla Walla for the counties of Walla Walla and Whitman, of murder in the first degree, and was found guilty of murder in the second degree, and sentenced by the court to imprisonment in the penitentiary for seventeen years, and he brings up the case here by writ of error to obtain a reversal of said judgment, and obtain a new trial upon the errors alleged to have been committed by the district court, and assigned in the precipe.

Of these alleged errors in their order:

The first error assigned is the overruling by the court of defendant's motion for a change of venue. The ground of the motion was the alleged prejudice of the people of Walla Walla county, or district, against him to such an extent as to prevent a fair and impartial trial of his case. The motion was supported by several affidavits—the strongest of which were made by defendant and some of his counsel. A change of venue

46

from one district to another is not grantable as of course, nor is it demandable as of strict right, but rests under our statute, as a matter of sound judicial discretion.   Secs. 229 and 230, page 249, statutes 1869.

The Judge must be fully satisfied of the truth of the allegations of prejudice and its prevailing extent before he is warranted in delaying the trial, or subjecting the proper county to the additional expense by granting the same.   The law presumes that the court is sufficiently willing to listen favorably to such motions and lodges with it discretionary power which is not reviewable by this court.   Error cannot be assigned on such an exercise of judicial discretion.

But it is alleged that the court ought to have excluded the jurors from Walla Walla county.

Although there may be some doubt as to the true meaning of Section 231, page 250, statutes 1869, taken in connection with the preceding sections, yet we are all of the opinion that the better construction would require the exclusion of the jurors from a particular county, where the sub-district is composed of more than one county when the proper motion and affidavit is made by the defendant.   But while we are of the opinion that the above is the safer and better construction, we can find nothing in this record to show that a single juror was taken from Walla Walla county.   It is true that defendant in his motion for a new trial says that certain jurors were taken from Walla Walla county, but the court overruled the motion.   It might have been overruled because it was untrue in fact. Whether the ruling was based on matter of law or matter of fact so far as this point is concerned, it is immaterial, for we are all of the opinion that the point cannot be raised in this way.

Sections 221 and 222, pages 53 and 54, of the code of 1869, provide for the trial of a challenge made to an individual juror.   If a juror was from Walla Walla county, he could have been challenged for cause and the fact of his residence developed either by his examination or the testimony of other witnesses. The Judge as trier makes a minute of the challenge and of the testimony, and his notes and the substance of the testimony can

be made a part of the record by bill of exception.  This is the only proper way to bring before this court any error of the district court in the allowance or disallowance of a challenge to an individual juror.  This record, it is true, shows that eleven of these jurors were challenged for cause, but no attempt was made to show whether the challenge was true or not.  Suppose the · challenge had been made for actual bias, could the court sustain the challenge without an affirmative development by proper testimony of the fact upon which said bias is founded?  The law presumes a man competent to sit upon a jury until the contrary is shown, and he who makes a challenge must sustain that challenge by proof.

There is in this record a motion to exclude certain jurors because the motion says they were from Walla Walla county. An allegation of this kind made in an unverified motion is not conclusive upon the court.  What greater effect can it have than a challenge unsustained by proof?  But admitting, for the sake of argument, that the mere statement in the motion is sufficient, and the court erred in overruling the motion, how could this ruling have injured the defendant, unless it was followed by the admission of jurors from that county?  We find no error in the record on this point.

The second assignment of error is the refusal of the court to give the following instructions, asked by the defendant :

" If the jury believe from the evidence, that the defendant was attempting to kill Walker, and that Ward, the deceased, interfered to prevent the defendant from killing Walker, but that Ward gave no reasonable notice to the defendant that he interfered for the purpose of preventing such killing and to keep the peace, and not to interfere in the quarrel, then the jury cannot find the defendant guilty of murder in the first degree."

A brief statement of a portion of the evidence in the record is necessary, not only to a full understanding of this instruction asked, but of other points raised and the refusal of the court to give the instruction.

There had been some angry words in the saloon, which resulted in Walker striking defendant with a beer mug on the

forehead.   Walker immediately afterwards escaped from the saloon and ran, or walked at a rapid pace, down the street.   Defendant followed, with a pistol in his hand, out of the saloon and on to the sidewalk, and fired at Walker as he retreated.   Deceased went up to the defendant immediately after he had fired one shot and was preparing to fire another, and took hold of him without telling him for what purpose, and defendant said:   Let go, G—d d—n you, or I will shoot you.   A scuffle ensued in which deceased tried to prevent defendant from shooting him, but he was unsuccessful.

It is the duty of every good citizen to interfere to prevent the commission of any felony attempted to be committed in his presence.   This duty is imposed by law.   Its exercise is not necessarily dependent upon the giving of "reasonable notice" of his intent so to do.   The failure or neglect to give such notice does not of itself reduce the homicide from murder in the first degree to murder in the second degree, because such neglect, which is personal to the deceased, does not exclude the existence of deliberate and premeditated malice upon the part of the slayer, for he may improve the occasion to accomplish his long meditated design.   Whether a killing under such circumstances is murder in the first degree or murder in the second degree must be determined from all the facts attending the killing, and not by the fact whether reasonable notice was given or not.   Such notice is not the line which separates one from another.   Whether notice was given or not being a part of the *res gestæ* is of course admissible in evidence.

We find no error in the refusal of the above quoted instruction.

The third error assigned is the refusal of the court to give the following instruction :

"If two persons are engaged in a fight, and a third person assaults one of the parties, and the party assaulted thereupon kills the assaulting party, then such killing is no more than manslaughter."

We are all of the opinion that this instruction was properly refused.

What is manslaughter? It is either voluntary upon a sudden heat, or involuntary but in the commission of an unlawful act. In neither case can there be malice, express or implied. Section 16, page 201, statutes 1869.

Now it cannot be claimed, nor is it true that the killing in this case was involuntary manslaughter. Then, if manslaughter at all, it must have been voluntary manslaugther.

The court was asked to charge that a mere assault would make the killing manslaughter. There is no such rule of law. All the authorities agree that this "sudden heat" must spring from an adequate cause; the provocation, in other words, must be great; it must be of a character to stir the blood, and to arouse for the time being uncontrollable passion. It must not only be adapted to accomplish the purpose, but it must actually do it before the "sudden heat" can be said to exist. Now there is nothing in the great majority of assaults to produce this maddening result.

Besides the existence of an assault does not necessarily exclude the existence of malice, and if malice existed, the killing could not be manslaughter.

We find no error is this refusal.

Again, there was evidence introduced on the trial tending to show that a short time previous to the shooting at Walker, as we have shown in the testimony given above, that Walker had struck defendant a blow with a beer mug on the forehead. Upon this state of the evidence, the court gave the following instruction, the giving of which is assigned as error.

"It is claimed by the defendant that at the time of the alleged shooting, by reason of a wound received upon his head, he was deprived of his reasoning faculties, and was not conscious of what he was doing, and did not know that he was committing a crime.

"This is a matter of defence that must be substantially proved by the defendant as an independent fact, and the burden is on the defendant to prove it.

"The law presumes a man sane and possessed of his reasoning faculties until the contrary is proved.

"And if in the case before you the killing be admitted, or clearly proved, then the defendant in order to excuse the same by reason of his being deprived of his reason at the time of said act, must satisfy you by the evidence of such fact, to wit: That at the time of the commission of said act, he was deprived of his reasoning faculties in so far as to be unconscious that he was committing a crime."

The rule of law, as to the burden of proof in criminal cases we all agree, is this: The burden is on the Territory to make out every material allegation in the indictment beyond all reasonable doubt. The learned Judge who tried the cause in the District Court repeatedly, in the instructions given on his own motion, and in those asked on the part of the defendant, told the jury that such was the rule of law. The force and effect of this rule cannot be destroyed by any action of the prosecuting officer so far as the facts constituting the *res gestæ* are concerned. Part of the facts included in the *res gestæ* may be developed by the Territory, and part by the defense, but still the rule is the same. The defendant is entitled to the instruction that the jury must be satisfied of his guilt beyond all reasonable doubt on all the facts so put in evidence, and so the jury were told, except as shown above. And we are satisfied that so far as the facts attending the killing are concerned—at least so far as those facts are included in the *res gestæ*, that the burden of proof never shifts. This is as true of the defense of insanity under the limitations stated above, as of any other defense. But if insanity is set up as a separate and distinct defense, and its proof does not consist of the facts attending the killing, then the proof must be made out by the defendant, the legal presumption of sanity being sufficient for the indictment in the absence of all evidence to the contrary. *Commonwealth vs. James McGee*, 1 Gray, 61; 1 Greenleaf on Ev., Sec. 81 b. and 81 c.; *Oyletine vs. State*, 28 Alabama, 673; *Tweedy vs. State*, 5 Iowa, 435; *Commonwealth vs. Hawkins*, 3 Gray, 463. Dissenting opinion of Wilde, Judge, in case *Comn. vs. York*, 9 Met., 425.

Such being the law, let us return to the instruction given. If the evidence returned here, or recited in the instruction, had warranted any instruction on the subject of insanity at all, we think in view of the above statement of the law that the instruction was erroneous, if the facts upon which it was based could properly be considered a part of the *res gestœ.*

But we are all of the opinion that there was no evidence calling for a statement of the law upon that subject, and that the instruction gave the defendant the benefit of a defense to support which there was no evidence given. A mere blow, whether upon the head or any other part of the person, nothing appearing to show its severity or any other physical consequence from it, is not evidence from which insanity may be inferred. The world has had quite enough of that kind of insanity which commences just as the sight of the slayer ranging along the barrel of a pistol, *marks* a mortal spot on the body of the victim and *ends* as soon as the bullet has sped on its fatal mission.

We find no error prejudicial to the rights of the defendant in this instruction.

The last error insisted upon here by learned counsel for the defendant, is that the indictment does not show that twelve grand jurors concurred in finding it. This court has already decided at this term in the case of *Watts vs. The Territory,* that the finding, endorsement, and presentation, and filing of the indictment in the manner prescribed by law is sufficient evidence of that fact.

There are one or two other errors assigned in the precipe but they seemed to be abandoned on the argument here. We find no errors in the record, and the judgment must be affirmed with costs, and it is so ordered.