BANCO DE PONCE, Plaintiff and Appellee, *v.* CELESTINO IRIARTE ET AL., Defendants and Appellants.

No. 8379.   Argued February 6, 1942.—Decided March 4, 1942.

*F. R. Aponte* for appellants.  *Vicente Zayas Pizarro* and *M. Orraca Torres* for appellee.

MR.. JUSTICE TODD, JR., delivered the opinion of the court.

Banco de Ponce brought, in the District Court of Ponce, an action to recover the amount of two joint and several promissory notes which were executed by the defendants and in which the latter expressly submitted themselves to the jurisdiction of the Ponce courts.  On March 24, 1941, the defendants moved for a change of venue to the District Court of Humacao because the defendant Adolfo García Veve was domiciled in the latter district and the action involved was a personal action.  The motion was denied on April 22, 1941, on the ground that the defendants had submitted to the jurisdiction of the Ponce courts, and thereupon the defendants took an appeal to this court.

After a motion to strike had been sustained in part and the plaintiff had filed an amended complaint, the defendants when answering the same, filed another motion for the transfer of the case to the District Court of Humacao on the ground that the convenience of the witnesses for the defendants and the ends of justice would be promoted thereby. After hearing the parties, the lower court denied said motion, and the defendants have also appealed from that decision to this court, both appeals having been jointly prosecuted.

In support of their appeals the appellants urge that the lower court erred (1) in denying the motion for a change of venue, on the basis of the agreement set forth by the appel-

lants in the promissory notes sued on, and (2) in holding that in view of such an agreement, a change of venue would not lie even though the conveniences of the witnesses and the ends of justice might be promoted thereby. Let us consider the first error assigned.

In the promissory notes involved in this action, the defendants declared as follows: "We expressly submit to the jurisdiction of the Ponce courts." Sections 76 and 77 of the Code of Civil Procedure (1933), in their pertinent part, read thus:

"Section 76.—In accordance with its jurisdiction, a court shall have cognizance of the suits to which the maintenance of all kinds of actions may give rise, when the parties may have agreed to submit the suit to decision of court.

"Section 77.—The submission shall be understood to be made:

"1. By the written agreement of the parties.

" * 　　 * 　　 * 　　 * 　　 * 　　 * 　　 * "

As early as 1900, this Supreme Court, in *Garcés* v. *Franceschi*, 1 *S.P.R.* 84, explained the distinction between jurisdiction and competency as follows:

"*Jurisdiction* is the power with which the judges and courts are vested to administer justice, and *competency* is the power they have to take cognizance of certain cases by reason of the subject matter or by reason of the persons involved."

In 1911, applying §§ 76 and 77 of the Code of Civil Procedure, *supra*, in *Bayron et al.* v. *García et al.*, 17 P.R.R. 512, 519, after citing the *Garcés* case, *supra*, this court speaking through Mr. Chief Justice Hernández said:

" 'Jurisdiction,' as the learned commentator, Manresa, says, 'always emanates directly and immediately from the law; it is a power which nobody upon whom the law has not conferred it can exercise; jurisdiction is had by, and the power to administer justice is vested in, those persons only upon whom the law has conferred such power. But the competency of a judge to take cognizance of a cause, although it may also be derived from the law, sometimes originates directly, immediately, and exclusively therefrom, and at other times it

originates from the will of the parties. The former case is the general rule and the latter the exception.'

"Therefore, while jurisdiction cannot be conferred by consent of the parties, the contrary holds with respect to competency. If by virtue of law a court lacks jurisdiction to take cognizance of an action, the consent of the parties can never confer such jurisdiction.

"On the other hand, if a court lacks competency to take cognizance of an action, it acquires such competency, if it has jurisdiction of said action, by agreement or submission of the parties, in accordance with sections 76 and 77 of the Code of Civil Procedure."

Three years afterward, in *Hernaiz, Targa & Co.* v. *Vivas*, 20 P.R.R. 99, 106, this court said that some confusion arises in these matters of submission to jurisdiction and change of venue by the fact that §§ 76 and 77 of the Code of Civil Procedure are of a different origin from that of the code as a whole. It was not, however, until 1916, in the case of *Gómez* v. *Toro*, 23 P.R.R. 596, 601, that this court, through the then Associate Justice Del Toro after making a comparative analysis of said sections and §§ 56, 57, and 58 of the former Law of Civil Procedure, and after quoting more extensively from Manresa's Commentaries and the American decisions, established the following doctrine:

"We have considered the cases cited and think that they are not applicable. In the new Code of Civil Procedure the Porto Rican legislators intended to preserve, and did preserve, the principle of the old code regarding previous submission of the parties. The said provision is clear and has been construed repeatedly, as we have seen, to mean that previous submission is a lawful agreement and when made in legal form is binding upon the person who submits himself, and even upon his heirs. Such construction was throughly understood and practiced in Porto Rico and is not contrary to honesty, good usage or public policy. Apparently the only difference between the American and Spanish jurisprudence is that according to the former an action must be begun before the party can submit himself, and according to the latter such submission may be agreed upon in the contract which may give rise to the action. Therefore, the principle of voluntary submission, which, in our opinion, is the essential element, is recognized by the jurisprudence

of both countries. For this reason, although our present Code of Civil Procedure is almost entirely of American origin, its sections 76 and 77 can easily subsist with their old construction. No fundamental right recognized by the present laws is violated thereby, and the legislative intent, which undoubtedly was to preserve a familiar contractual formula in use for many years in this Island, is complied with.''

The case of *Gómez* v. *Toro, supra,* has been cited with approval in *Martorell et al.* v. *J. Ochoa Hno. et al.,* 25 P.R.R. 707; *Agenjo y Santiago et al.* v. *Santiago Rosa et al.,* 26 P.R.R. 648; *Mitjams* v. *Sucn. of Mitjams,* 26 P.R.R. 731; *Korber & Cía* v. *Colón et al.,* 30 P.R.R. 718; *Successors of Abarca* v. *Nones et al.,* 30 P.R.R. 810; *Font* v. *Castro,* 33 P.R.R. 746; and *Succrs. de J. Fernández* v. *Zalduondo,* 40 P.R.R. 325.

In *Korber & Cía.* v. *Colón et al., supra,* the appellants expressly alleged that the decision in *Gómez* v. *Toro, supra,* was erroneous and urged that the same be overruled. The court confirmed its previous holding, thus.

''The case of *Gómez* v. *Toro, supra,* has been cited with approval in several instances by this same court. See especially the case of *Mitjams* v. *Succession of Mitjams,* 26 P.R.R. 731. In the course of the opinion it was said:

'' 'That waiver of venue is a legitimate subject of contract, as well as a local custom of long standing sanctioned by public policy and sustained by the uniform current of judicial decision, has been several times decided by this court.' ''

Now, twenty-six years after the said doctrine was laid down, we are again requested to overrule it on the grounds that the same is contrary to public policy and that on that account it has been discarded by the American courts.

Although that argument should not require extensive consideration, inasmuch as the doctrine established by this court was based on the well-defined distinction set down in the cases cited concerning the Spanish origin of §§ 76 and 77 of the Code of Civil Procedure and the acceptance by this

court of the propriety of the contractual fixing of venue in connection with the concepts of "jurisdiction and competency," we might as well show that the alleged unanimity of the American courts on the subject, as claimed by the appellants, is nonexistent, and that, on the contrary, the validity of the contractual submission has been sustained in a great many cases. Let us make a cursory review of the decisions.

The Supreme Court of Wisconsin upheld the validity of such submission in *State* v. *Luchsinger,* 286 N. W. 72; the Court of Appeals of Indiana did likewise in *Terre Haute Brewing Co.* v. *Ward,* 102 N. E. 395; in Alabama a similar decision was rendered in *Chandler* v. *Hardeman,* 68 So. 525; the Supreme Court of Washington held in *State* v. *Kings County Super. Co.,* 112 P. 927, that the parties may agree as to which court shall take cognizance of a certain case; in the very State of Massachusetts, which may be said to be the birthplace of the contrary doctrine, that is, the rule invoked by the appellants as established in *Nute* v. *Hamilton Mut. Ins. Co.,* 6 Gray (Mass.) 174, and *Hall* v. *People's Mut. Ins. Co.,* 6 Gray (Mass.) 185, the Supreme Judicial Court refused to follow such rule in *Daley* v. *People's Bldg., Loan & Savings Ass'n.,* 59 N. E. 452, and *Mittenthal* v. *Mascagni,* 66 N. E. 425, upholding instead the validity of a contractual submission, and as a matter of fact if the case of *Nute* v. *Hamilton Mut. Ins. Co., supra,* was not overruled, an attempt was made to distinguish it. Lastly, although the Supreme Court of Texas held in *International Travelers' Ass'n.* v. *Branum,* 212 S. W. 630, that the contractual submission, prior to the commencement of the action, is void as contrary to public policy, there have been statements from the Courts of Civil Appeals of Dallas and Amarillo which conflict with such decision. Thus, for instance, in *Texas Moline Plow Co.* v. *Biggerstaff,* (Tex.) 185 S. W. 341, the Court of Civil Appeals of Amarillo, after basing its decision on a certain statute which it held to be applicable, further said:

". . . Upon another ground, the plea of privilege was good: The above-quoted paragraph, by agreement, fixed the venue of any suit growing out of a breach of the contract in Dallas county. Such a stipulation has been held valid in this state (*Ft. Worth Board of Trade* v. *Cooke*, 6 Tex. Civ. App. 324, 25 S. W. 330), and they are sustained by the weight of authority in other jurisdictions (*State ex rel. Schwabacher Bros. & Co.* v. *Superior Court*, 61 Wash. 681, 112 Pac. 927, Ann. Cas. 1912C, 815 and note; *Williams* v. *Branning*, 154 N.C. 205, 70 S.E. 290, 47 L. R. A. (N.S.) 351 and note)."

It is true that that decision was rendered prior to that of the Supreme Court in *International Travelers' Ass'n.* v. *Branum, supra;* but even subsequent to the latter decision the Court of Civil Appeals of Dallas, in *Pavlidis* v. *Bishop & Babcock Sales Co.*, (Tex.), 41 S. W. (2d) 294, insisted again on the validity of the doctrine of contractual submission, saying:

"We cannot agree to the latter suggestion; that is, that venue can not be fixed by contract. The right to be sued in the county of one's residence is a privilege that may be waived by agreement. and, unless the agreement fixing venue contravenes a statute, it is, in our opinion, valid and enforceable; in fact, venue fixed under subdivision 5 of article 1995, rests altogether upon contract. (Citing authorities.)"

There is no unanimity in the decisions as claimed by the appellants in support of their contention. There is an open conflict of authorities, and although it might be conceded that most jurisdictions follow the doctrine declaring invalid any contractual submission concerning actions not yet commenced, it is likewise a fact that in many cases the validity of such a contract is upheld. As stated by Mr. Justice Holmes in *Daley* v. *People's Bldg., Loan & Savings Ass'n.*, 178 Mass. 13, 59 N. E. 452:

"One of the conditions is that 'any action brought against this association by any shareholder shall be brought . . . in the county of Ontario, state of New York.' We are of opinion that this condition should be enforced.

"We do not mean to overrule *Nute* v. *Insurance Co.*, 6 Gray, 174, but it is obvious that that was a somewhat hesitating decision, and we think that it should not be pressed so far as to dispose of this case. . . . The language is different from that used in *Nute* v. *Insurance Co.*, and stronger. It plainly purports to attach a condition to the contract, and we are of opinion that it does so effectually. It is not intimated in *Nute* v. *Insurance Co.* that when such a condition is attached to a contract and is valid, there is any technical difficulty in enforcing it as an answer to an action in another place.

". . . But objections of this sort may be made to appear more serious than they are. Courts are less and less disposed to interfere with parties making such contracts as they choose, so long as they interfere with no one's welfare but their own."

As we have seen, the American decisions are not unanimous, and in many jurisdictions application has been made of the doctrine laid down by this court in *Gómez* v. *Toro*, *supra*, resting on the construction of similar provisions in the Spanish laws. We fail to see any reason for altering such doctrine which is well known and has been accepted by the legal profession for over 26 years. As was stated in *Ex parte García*, 44 P.R.R. 286, applying the rule of *stare decisis:* "Once a question has been deliberately settled after solemn argument, it should not be disturbed, unless the ruling be so manifestly erroneous that it can not be supported without doing violence to reason and justice."

The appellants have not convinced us that the doctrine of the prior contractual submission to the competency of a court of general jurisdiction is so manifestly erroneous that it can not be upheld without doing violence to reason and justice. On the contrary, it is our opinion that to reverse such doctrine after the same has been in force for so many years and become so familiar to everybody would affect many contracts entered into relying thereon. The first error assigned is nonexistent.

■■ So is the second, as it appears from the record that the lower court, in its denial of the motion for a change of venue filed by the defendants on the ground of the con-

venience of the witnesses, considered the affidavits of both parties, and although it set forth that the submission contract itself precluded the transfer sought, what it ultimately held was as follows:

"The reason advanced in the motion for a change of venue is that the witnesses therein mentioned are not under the obligation to come to the District Court of Ponce to testify, but that they would be willing to appear in the District Court of Humacao and if compelled to appear in the District Court of Ponce the defendants would be impelled to submit their case by means of depositions. If this constitutes an inconvenience for the witnesses we should say that it is not the convenience of the witnesses for either party but the convenience of the witnesses for both parties that should be considered, and the inconvenience of the witnesses shall be the same both for the plaintiff and for the defendants. In these circumstances, the ground for the change of venue in this case is not valid. (*Rowland* v. *Bruton*, 14 P. (2d) 116 (Cal.); *Leopold* v. *Livermore*, 197 P. 778, 115 Wash. 481.)

So that what the lower court did was to weigh the convenience of the witnesses for both sides and the furtherance of justice and, exercising its discretion, denied the motion to transfer the case. We have already held in *Sánchez* v. *Atlas Commercial Company*, 27 P.R.R. 522, and in *Abraham* v. *Piereschi*, 36 P.R.R. 53, that the authority granted to courts by section 83 of the Code of Civil Procedure to change the place of trial where the convenience of the witnesses and the ends of justice are promoted thereby is discretionary, and that in case of conflicting affidavits in support of a change of venue, this court will not disturb the discretion nor reverse the decision of the lower court, unless an abuse of discretion is shown. We are not convinced that such showing has been in the instant case and, therefore, both appeals will be denied and the orders appealed from affirmed.